UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HOMERO GARCIA,

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY CORRECTIONAL CENTER, *et al.*,

Respondents.

Case No. 2:26-cv-00511-JLT-CDB (HC)

ORDER VACATING FINDINGS AND RECOMMENDATIONS

(Doc. 15)

ORDER GRANTING PETITIONER'S MOTION FOR LEAVE TO FILE SECOND AMENDED PETITION

(Doc. 23)

FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (A-Number 246 060 030)

(Doc. 24)

**14-Day Objection Period**

Petitioner Homero Garcia, a federal immigration detainee previously proceeding pro se, initiated this action on February 20, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1). That same day, Petitioner filed a motion for temporary restraining order ("TRO"). (Doc. 3). Petitioner is in the custody of Immigration and Customs Enforcement ("ICE") at the California City Correctional Center. (Doc. 1 at 1). Respondents are the unnamed Warden of the California City Correctional Center; the unnamed Field Office Director for the ICE San Diego Field Office; Todd M. Lyons, Acting Director of ICE; Markwayne Mullin,

Secretary of the Department of Homeland Security ("DHS"); and Todd Blanche, Attorney General of the United States.[1] *Id.*

On February 20, 2026, the assigned district judge denied Petitioner's motion for TRO and referred the matter to the undersigned for a determination on the merits. (Doc. 7). On March 13, 2026, Respondents filed a response to the petition. (Doc. 8). Petitioner thereafter filed a traverse and an amended traverse. (Docs. 9, 10). Respondents filed a supplemental exhibit on March 25, 2026, after which Petitioner filed a reply. (Docs. 11, 12). Petitioner then filed two motions, both for immediate release. (Docs. 13, 14).

On May 18, 2026, the undersigned issued findings and recommendations to deny Petitioner's petition for writ of habeas corpus. (Doc. 15). Petitioner filed objections. (Docs. 16, 17).

Before the presiding district judge could resolve the pending findings and recommendations and over the past five months since those findings and recommendations were issued, Petitioner has filed: three (3) motions for emergency injunctive relief (Docs. 18, 25, 27); three (3) amended petitions (Docs. 19, 24, 29); three (3) motions to expedite resolution of the action (Docs. 21, 32, 33); and miscellaneous other filings.

Relevant here, the presiding district judge has referred to the undersigned (*see* Doc. 26) Petitioner's motion to file a second/supplemental petition (Docs. 23, 24) and motion for preliminary injunction (Doc. 25).[2] Respondents filed an opposition to the lodged second amended petition (Doc. 30) and Petitioner filed a reply (Doc. 31). After briefing was complete, on October 20, 2026, counsel filed a notice of appearance on Petitioner's behalf. (Doc. 34).

## I. <u>Relevant Background</u>

### A. The Original Petition

According to the allegations in his original petition, Petitioner is a Mexican national who

---

[1] Markwayne Mullin is automatically substituted for the former Secretary of DHS, Kristi Noem, and Todd Blanche for Pamela Bondi, former United States Attorney General. Fed. R. Civ. P. 25(d).

[2] After Petitioner's motion to amend and proposed second amended petition were filed, the Clerk of the Court docketed what it captioned as a "Third Amended Petition" (Doc. 29); however, that filing is a duplicate of Petitioner's proposed second amended petition.

entered the United States in April 2000. Petitioner asserts that he "lawfully entered" the United States, that he was "paroled into the country," and "subsequently filed an application for asylum," which remains pending as of the date of his petition. He alleges that ICE previously released him from custody and allowed him to remain in the community while removal proceedings were pending. (Doc. 1 at 1-2, 4). Petitioner asserts that, on September 3, 2025, ICE agents arrested him at his workplace. *Id.* at 2. He asserts (but has since retracted that assertion, *see infra*) that he has been detained without being provided a bond hearing or custody redetermination. *Id.* at 5. Petitioner attaches numerous documents to his petition, many of which are only partially legible. Insofar as the Court can determine, they appear to consist of printouts of immigration case information and orders, banking records, a birth certificate, wage and tax records, and a residential lease. *Id.* at 10-49.

In their response to the original petition, Respondents assert that they "do not have a record indicating [that Petitioner was] encountered before 2025." (Doc. 8 at 2). Respondents contend that Petitioner filed a prior petition for a writ of habeas corpus in the Central District of California: *Garcia v. Noem*, No. 2:25-cv-9474-KK-AS. *Id.* at 1-2. Respondents note that, in the prior *Garcia v. Noem* action, Petitioner (through counsel) filed a motion for TRO which was granted on October 9, 2025, and the court ordered the government to provide Petitioner with a bond hearing. *Id.* at 1 (citing *Garcia v. Noem*, No. 2:25-cv-9474-KK-AS, 2025 WL 3898482, at *1 (C.D. Cal. Oct. 9, 2025)). Respondents note that Petitioner received a bond hearing on November 12, 2025, and that he chose not to appeal the immigration judge's ("IJ") denial of bond. *Id.* at 2; *see* (Doc. 8-2 at 5) (IJ order denying bond due to risk of flight, setting forth reasoning regarding community ties and residency). Respondents further assert that Petitioner was "granted the opportunity to voluntarily depart the United States by December 2, 2025," but appealed the order and is "now subject to a removal order entered on December 3, 2025." (Doc. 8 at 3).

In his traverse and amended traverse, Petitioner asserts that he has "never filed any prior habeas corpus petition challenging his detention or raising the claims presented in this action." Petitioner states that Respondents' claim "appears to stem from a fundamental error, likely involving a misidentification with a different individual who shares a similar or identical name."

(Doc. 9 at 4); *see* (Doc. 10 at 1) (asserting that Respondents have "confused the identity of two distinct people … without bothering to verify Alien Registration Numbers").

Petitioner attaches numerous documents to his amended traverse, including a verification of tenancy from Allan Suwito, dated October 23, 2025, that purports to confirm Petitioner's tenancy at an address in Burbank, California, with his tenancy having commenced on October 1, 2011, and remaining presently active under the terms of a written lease agreement. (Doc. 10 at 6). Petitioner attaches a letter, dated September 13, 2025, from Jacob Bersegian, manager at Vineland Car Wash in North Hollywood, California, asserting that Petitioner has worked at the car wash since 2008 and until he was detained by ICE. *Id.* at 7. Petitioner attaches a letter, dated October 23, 2025, from his neighbor Casimiro Saucedo Mendez who supports the fact that Petitioner lives at the Burbank address and is married. Petitioner includes a scan of Mr. Saucedo Mendez's California driver license. *Id.* at 12-15. Petitioner also includes letters from two other neighbors, Stephanie Saucedo and Mayra Villalvazo, the former dated October 22, 2025, and the latter undated. *Id.* at 17, 24. Petitioner also attaches the declaration of Juan Eduardo Martinez Arguello, which erroneously asserts that Mr. Martinez Arguello is the petitioner in the instant action, and contains information inapplicable herein. *Id.* at 31-34.

Respondents attach two exhibits in a supplemental filing. *See* (Doc. 11). The first is a purported filing by attorney Jose R. Jordan in an underlying immigration proceeding in support of bond redetermination, identifying the same Alien Number as Petitioner in this action. (Doc. 11-1 at 1-3). The second is an order granting a TRO in the *Garcia v. Noem* action in the Central District of California, and directing an individualized bond hearing. (Doc. 11-1 at 6-12).

In his reply, Petitioner asserts that the prior action in the Central District of California was "filed by prior counsel without Petitioner's knowledge or authorization," and was "dismissed on procedural grounds of mootness, not on the merits" and "pursued by an attorney who effectively abandoned Petitioner, failing to consult with him at any stage of the proceeding." (Doc. 12 at 1-2). Petitioner provides that "Mr. Jordan never consulted with petitioner about filing this petition" and filed a "motion to voluntarily dismiss the petition, again without consulting or informing Petitioner," and Petitioner "only learned of this prior case after it had already been closed." *Id.* at

2.

**B. The Motion to Amend and Proposed Second Amended Petition**

In the pending motion to amend and to file a second amended petition, Petitioner "acknowledges" that he did, in fact, receive a bond hearing on November 12, 2025. (Doc. 23 at 3; Doc. 24 at 1). Petitioner asserts that his proposed, second amended petition narrows the issue to be decided as "whether continued reliance" on that "months-old" bond determination "remains constitutionally adequate after nearly eleven months of civil confinement." (Doc. 23 at 3).

In his proposed, second amended petition, Petitioner asserts four claims denominated "Claim One" through "Claim Four." The claims present various arguments in support of the contention that Petitioner's continued detention violates due process. In general, Petitioner alleges that his detention has become impermissibly prolonged and punitive given that his individual circumstances have not been considered by an immigration judge since his bond hearing on November 12, 2025. Thus, for instance, although he expressly does not allege error by the immigration judge in connection with the earlier bond hearing (*see* Doc. 24 at 1), he asserts that he has been deprived of "individualized" consideration of less restrictive alternatives to continued detention given the prolonged duration of that detention (*id.* at 6-7). He relatedly argues that the pendency of his BIA appeal does not permit the government to "impose open-ended physical confinement without a current necessity determination." *Id.* at 8.

The Court also takes judicial notice that Petitioner was granted voluntary departure on November 4, 2025, and that an appeal was filed December 3, 2025, and remains pending.[3] Petitioner filed an appellate brief on July 6, 2026; the government did not timely file any brief.

## II. <u>Governing Authority</u>

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus

---

[3] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Oct. 19, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co*., 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

## III. Discussion

### A. The Motion to Amend Will Be Granted

#### 1. Governing Law

Rule 15 permits amendment of a pleading once as a matter of course no later than 21 days after service or 21 days after service of a responsive pleading or motion to dismiss, whichever is earlier. *See* Fed. R. Civ. P. 15(a)(1). After such time has passed or petitioner has once amended this pleading, amendment may only be by leave of the court or by written consent of the adverse parties. Fed. R. Civ. P. 15(a)(2). "Rule 15(a) is very liberal" and a court should freely give leave to amend when "justice so requires." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *see Chodos v. W. Publ. Co*., 292 F.3d 992, 1003 (9th Cir. 2002) ("it is generally our policy to permit amendment with 'extreme liberality'") (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

Granting or denying leave to amend a complaint under Rule 15 is within the discretion of the court. *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir, 1981); *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011) ("refusing Chudacoff leave to amend a technical pleading error, albeit one he should have noticed earlier, would run contrary to Rule 15(a)'s intent.").

A court ordinarily considers five factors in assessing whether to grant leave to amend: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended its complaint." *Western Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991). The factors are not weighed equally. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see Atkins v. Astrue*, No. C 10–0180 PJH, 2011 WL 1335607, at *3 (N.D. Cal. Apr. 7, 2011) (the five factors "need not all be considered in each case"). Undue delay, "by itself ... is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). On the other hand, futility of amendment and prejudice to the opposing party can, by themselves, justify the denial of a motion for leave to amend. *Bonin*, 59 F.3d at 845; *see Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (the consideration of prejudice to the opposing party carries the greatest weight).

In conducting this five-factor analysis, the court generally grants all inferences in favor of permitting amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). Moreover, the court must be mindful that, for each of these factors, the party opposing amendment has the burden of showing that amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

**2. Analysis**

Here, having conducted the five-factor analysis noted above, the Court finds both that Petitioner does not seek amendment for improper motive and that he has not exhibited undue delay in seeking leave to amend, and Respondents do not argue otherwise in responding to the lodged second amended petition (*see* Doc. 30). Nor do Respondents argue that they would experience any prejudice were the Court to grant leave to amend and the Court perceives no such prejudice. If anything, Respondents contend that granting leave to amend would be futile because the relief Petitioner seeks is not available based on the allegations of his proposed second amended petition.

Although futility of amendment is a closer call than the other factors, it is not plainly evident from the face of the proposed second amended petition that Petitioner is barred from obtaining the relief he seeks. Because Respondents bear the burden of showing that amendment is not warranted (*DCD Programs*, 833 F.2d at 187) and because they have not argued against permitting

amendment, and considering that courts are directed to generously grant leave to amend (*see Chodos*, 292 F.3d at 1003), the Court will grant Petitioner's motion for leave to amend and treat the lodged second amended petition (Doc. 24) as the operative pleading.

**B. The Operative Petition Should Be Denied**

**1. Petitioner Did Not Exhaust Remedies**

**(a) Governing Law**

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)). "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

Where a petitioner fails to exhaust his administrative remedies, a court "ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)).

**(b) Analysis**

Respondents argue that Petitioner is not entitled to relief because he failed to appeal the IJ's denial of bond and has not filed a new custody request based on materially changed circumstances under 8 C.F.R. § 1003.19(e). (Doc. 30 at 2). Petitioner concedes that he neither appealed the IJ's bond decision nor sought a custody redetermination, but alleges in the proposed, second amended petition that exhaustion should be excused "because [his] claim is constitutional, the harm increases daily, and the Court has already developed an extensive record." (Doc. 24 ¶ 44; Doc. 31 at 13).

Although the undersigned previously recommended that any prudential exhaustion requirement be waived (Doc. 15 at 7), that recommendation was informed in part by Petitioner's contention that he had not received a bond hearing. However, Petitioner now acknowledges that he did, in fact, receive a bond hearing (on November 12, 2025). Thus, his discrete challenge no longer is that he was deprived of a bond hearing, but rather, that he should be excused from demonstrating materially changed circumstances before an immigration judge to seek a second bond hearing pursuant to § 1003.19(e).

Whether the prudential exhaustion requirement should be waived turns on the three-factor test identified in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007): (1) whether agency expertise is "necessary to generate a proper record and reach a proper decision"; (2) whether relaxing the requirement would invite "deliberate bypass of the administrative scheme"; and (3) whether "administrative review is likely to allow the agency to correct its own mistakes and forestall the need of judicial review." *See Gagik T. v. Chestnut*, No. 1:26-cv-02839-MWJS (HC), 2026 WL 1216897, at *2 (E.D. Cal. May 4, 2026) (citing Hernandez, 872 F.3d at 988).

Having considered and weighed the Puga factors, the undersigned finds that the prudential exhaustion requirement should not be waived. *Laing*, 370 F.3d at 997-98; *e.g., Mora v. Warden*, No. 1:26-cv-3346 DC CSK, 2026 WL 1651045, at *4 (E.D. Cal. June 8, 2026) ("To the extent petitioner seeks a second bond hearing, as a remedy for alleged prolonged detention, [under *Puga*] this Court finds that petitioner was required to exhaust administrative remedies as to his request for a second bond hearing and failed to do so."). First, it now is undisputed that Petitioner received a bond hearing pursuant to § 1226(a) before an IJ, was denied bond, and chose (in lieu of appealing

the IJ's decision to the BIA) to seek relief in the first instance before this Court. He expressly does not challenge any aspect of the conduct of this bond hearing (Doc. 31 at 1). He claims that changed circumstances (principally, the prolonged nature of his continuing detention and degradation of certain health conditions) reinforce the need for § 2241 review and acknowledges that he has recourse to a custody redetermination before an IJ under 8 C.F.R. § 1003.19(e). Although he correctly observes that the Court has developed an extensive record of relevant facts in this proceeding and that such a circumstance may undercut the need under *Puga* to permit further agency consideration, the undersigned notes that the record was not developed at the Court's request, but rather, at Petitioner's unceasing filing of multiple and occasionally duplicative pleadings. In sum, the undersigned concludes that the first *Puga* factor either is neutral or weighs against requiring exhaustion.

Second, "relaxation of the [exhaustion] requirement would encourage the deliberate bypass of the administrative scheme." *Hernandez*, 872 F.3d at 988; *see, e.g., Okoth v. Kaiser*, No. 1:25-cv-1936-KES-SAB (HC), 2026 WL 45199, at *3 (E.D. Cal. Jan. 7, 2026) (finding that the second *Puga* factor weighed against waiver of the prudential exhaustion requirement where "petitioner has not established at this point that [BIA appeal procedures] would be constitutionally inadequate as applied to him"); *Gagik T.*, 2026 WL 1216897, at *2 ("granting federal habeas relief under these circumstances would permit Petitioner to bypass the appellate tier of the administrative scheme Congress established. And allowing Petitioner to do so here would invite other detainees to do the same"). Whereas concern about incentivizing bypass of exhaustion requirements is ameliorated when the issue before a court could be decided dispositively for most future cases, here, Petitioner's challenge – that his changed, individual circumstances warrant review of his custody determination – is factually dependent. *Cf. Hernandez*, 872 F.3d at 989 ("waiver of the prudential exhaustion requirement will not encourage the deliberate bypass of the administrative scheme in future cases, because, once the questions presented here are decided, they should cease to arise.") (internal quotations and citation omitted); *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011) ("relaxation of the requirement in this case will not encourage future habeas petitioners to attempt to bypass the administrative scheme because, once the standard has been set, this issue should cease

to arise.”).

Third, administrative review is likely to allow the agency to address the merits of Petitioner’s claims in a manner to “preclude the need for judicial review.” *Hernandez*, 872 F.3d at 988. Here, Petitioner asserts that changed circumstances warrant excusal of the exhaustion requirement but offers no developed argument why the asserted changes – the prolonged duration of detention and deterioration of health conditions – should permit excusal of the requirement to exhaust. Indeed, treating the injury associated with prolonged detention as a basis to excuse exhaustion would eviscerate the rule requiring exhaustion that the Ninth Circuit holds should not be “lightly disregarded” (*supra*). *See Yu v. Noem*, No. 1:25-cv-2040 DJC AC, 2026 WL 1042213, at *3 (E.D. Cal. Apr. 17, 2026) (“To the extent [petitioner] argues that she would suffer irreparable injury because having to appeal to the BIA will prolong her detention, the same could be said for any individual appealing a bond denial, and excusing exhaustion on that basis would cause the exception to swallow the rule”), *F&R adopted by* 2026 WL 1188854 (Apr. 30, 2026); *Imon v. Keeton*, No. CV-20-00037-PHX-DWL (JZB), 2020 WL 4284378, at *11 n.12 (D. Ariz. July 27, 2020) (finding that because “Petitioner concedes that he has not requested a second custody redetermination hearing by an IJ,” “it makes sense to require exhaustion here because a redetermination request could obviate the need for habeas corpus intervention.”); *Hilario Pankim v. Barr*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *7 (N.D. Cal. May 19, 2020) (“Mr. Hilario argues that the Court should waive prudential exhaustion on the grounds that he is suffering irreparable harm by his continued [over 8-month] unlawful detention … The Court rejects that argument because it begs the constitutional questions presented in his petition by assuming that petitioner has suffered a constitutional injury.”) (internal quotations and citation omitted); *see also Shiv Vig v. Albarran*, No. 1:26-cv-1252-DAD-JDP, 2026 WL 1346686, at *3 (E.D. Cal. May 14, 2026) (recommending petitioner be required to exhaust; reasoning “at petitioner’s bond hearing, the IJ considered the nature of petitioner’s criminal charges after petitioner’s counsel represented that petitioner was completing a judicial diversion program. [] That petitioner has now completed such a program does not excuse his requirement to exhaust.”), *F&R adopted by* 2026 WL 2020280 (July 13, 2026). Therefore, the third *Puga* factor weighs against waiver of the prudential exhaustion

requirement.

Accordingly, the *Puga* factors support the finding that Petitioner has failed to exhaust his administrative remedies and that exhaustion should not be excused. "Even where the *Puga* factors point toward exhaustion, a court retains discretion to excuse that requirement where administrative remedies are inadequate or inefficacious, pursuit of those remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Gagik T.*, 2026 WL 1216897, at *3 (citing *Hernandez*, 872 F.3d at 988). Here, as noted above, Petitioner does not advance any developed argument that seeking a custody redetermination would be futile. And the prolonged nature of Petitioner's continuing detention is driven largely by his refusal to seek relief through administrative mechanisms. Petitioner's arguments that exhaustion should be waived because of the delay inherent in the review process fails to demonstrate that the available administrative remedy – a custody redetermination before an immigration judge – is inadequate or would be a futile pursuit. *E.g., Aishan v. Mullin*, No. 5:26-cv-4523-DFM, 2026 WL 2666862, at *5 (C.D. Cal. Sept. 9, 2026) ("Petitioner alleges that he raises 'substantial constitutional questions' that should be exempt. [] However, a claim is not exempt from exhaustion because it is labeled constitutional; the question is whether the asserted error is 'correctable by the administrative tribunal' or lies 'outside the BIA's ken.'") (quoting *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995)); *Shiv Vig*, 2026 WL 1346686, at *3 ("petitioner has not demonstrated that the court should waive the exhaustion requirement on the basis that exhausting would delay relief.").

Because Petitioner does not demonstrate that the exhaustion requirement should be waived, the undersigned will recommend Petitioner's petition be dismissed without prejudice. *Hernandez*, 872 F.3d at 988.

**2. Petitioner Is Not Entitled to Relief Even If Exhaustion Were Waived**

Petitioner alleges in the second amended petition and argues in reply to Respondents' answer that his approximately 11-month detention since he was afforded a bond hearing violates his due process rights insofar as his detention has become prolonged without adequate consideration of his *present* individual circumstances and changed conditions since an immigration judge denied his earlier bond request.

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (*citing* U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (*citing United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" *Rodriguez v. Robbins* (*Rodriguez II*), 715 F.3d 1127, 1134 (9th Cir. 2013) (*quoting Rodriguez v. Hayes* (*Rodriguez I*), 591 F.3d 1105, 1114 (9th Cir. 2010)). *Cf. Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ("the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process") *with Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022) (in concurrence, observing that "it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute," and noting that both the Ninth Circuit "and the Supreme Court have repeatedly declined to decide constitutional challenges to bond hearing procedures in the immigration detention context") (emphasis in original).

Petitioner concedes that the Ninth Circuit held in *Rodriguez Diaz* that § 1226(a) does not entitle a detained noncitizen to a second bond hearing, but argues that the decision does not foreclose as-applied challenges to detention. (Doc. 31 at 9-10). Petitioner separately notes that in *Zadvydas*, the Supreme Court held that permissible detention can become impermissibly punitive as duration and circumstances change. *Id.* at 11, 14 (citing *Zadvydas v. Davis*, 533 U.S. 678)). Importantly, however, in *Zadvydas*, the Supreme Court considered a challenge to the prolonged detention of two noncitizens who were being detained at the discretion of the Attorney General under § 1231(a)(6) following the entry against the noncitizens of final orders of removal. These noncitizens had been ordered removed by the government and "all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving

country." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) (citing *Zadvydas*, 533 U.S. 678).

This case is not like *Zadvydas* because Petitioner is not in a "removable-but-unremovable limbo." *Id.* at 1063. His claims are akin to those raised by the petitioner in *Prieto-Romero*. There, a petitioner detained pursuant to § 1226(a) argued, like the claims and arguments of Petitioner here, that his detention (approximately three years) had become unlawfully prolonged. The Ninth Circuit observed that the "prolonged" nature of the petitioner's detention was the result in part of his pending appeal of a final order of removal. *Id.* at 1062. The Ninth Circuit explained that, though the petitioner's detention "lacks a certain end date, [] this uncertainty alone does not render his detention indefinite in the sense the Supreme Court found constitutionally problematic in *Zadvydas*." *Id.* at 1063. *Cf. id.* at 1064-65 & n.9 (noting that the petitioner's challenge to his removal order was subject to strict procedural rules that provided review would be "resolved with reasonable expedition," and distinguishing a case in which the government made an "unusual move" that delayed resolution). Because the petitioner's detention was permissible under § 1226(a) pending judicial review of his removal proceedings and there was no reason to find that his removal could not be accomplished upon completion of judicial proceedings ("such as a lack of a repatriation agreement with his home country," *id.* at 1065), and because the petitioner had received a bond hearing, the Ninth Circuit held "Prieto–Romero has not been denied procedural due process while in custody." *Id.* at 1068.

Like the petitioner in *Prieto-Romero*, Petitioner's detention here "remains statutorily authorized [pursuant to § 1226(a)], because he has not established that there is no significant likelihood of his removal in the reasonably foreseeable future." *Id.*. Nor is his detention violative of due process because "[h]e received a bond hearing that afforded him an individualized determination of the government's interest in his continued detention by a neutral decisionmaker." *Id.* Due process is further satisfied because Petitioner has recourse to seek a custody redetermination before an immigration judge (*see* 8 C.F.R. § 1003.19(e)) but seemingly has chosen to forbear from exercising that avenue to obtain relief. Accord *Jennings v. Rodriguez*, 583 U.S. 281, 284 (2018) ("Nothing in § 1226(a) … supports the imposition of periodic bond hearings every

six months in which the Attorney General must prove by clear and convincing evidence that continued detention is necessary. Nor does it hint that the length of detention prior to the bond hearing must be considered in determining whether an alien should be released.").

As noted above, Petitioner has received adequate procedural protections through the bond hearing he received on November 12, 2025. Petitioner's due process claim for prolonged detention fails. Additionally, Petitioner does not contest the constitutionality of the bond hearing nor assert an error of law by the immigration judge. Thus, the undersigned finds that Petitioner is not entitled to relief for any claim asserted in the second amended petition.[4]

## IV. Conclusion and Recommendation

Accordingly, IT IS HEREBY ORDERED that:

1. The findings and recommendations issued May 18, 2026 (Doc. 15) are VACATED.
2. Petitioner's motion (Doc. 23) for leave to file the proposed second amended petition (Doc. 24) is GRANTED.

And it is HEREBY RECOMMENDED that

1. The second amended petition for writ of habeas corpus (Doc. 24) be DENIED.
2. The Clerk of the Court be DIRECTED to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within 14 days** after being served with these findings and recommendations, the parties may file written objections with the Court. Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed beyond the 15-page limitation may be disregarded by the District Judge when

[4] Because the undersigned finds that Petitioner is not entitled to relief on any claim asserted in the second amended petition, Petitioner is not entitled to a preliminary injunction. *See Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (noting that a moving party's failure to demonstrate a likelihood of success on the merits of his claim dispositively disentitles him to a preliminary injunction).

reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).

Any failure by a party to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 21, 2026**

UNITED STATES MAGISTRATE JUDGE